UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
DAVID FERNANDEZ and JOEY FERNANDEZ, )
                                                   )
                               Plaintiffs, )
                                                      )
  -against- )
                                                    )
THE CITY OF NEW YORK; POLICE OFFICER )
MARCO PADILLA, Shield No. 25056; POLICE )
SERGEANT DANNY AGUILAR, Shield No. )
2496; POLICE OFFICER "FNU" [First Name )
Unknown] RODRIGUEZ; JOHN DOE # 1; JOHN )
DOE # 2; POLICE SERGEANT ELLIOTT )
ZINSTEIN; POLICE OFFICER "FNU" [FIRST )
NAME UNKNOWN] FREEMAN, Shield No. )
19103; POLICE OFFICER RENE CALZADA, )
Shield No. 23232; POLICE OFFICER ELBERT )
TIM, Shield No. 15162; RETIRED DETECTIVE )
ANTHONY MOORE, Shield No. 838; JOHN )
DOES and RICHARD ROES, )
                                                    )
                              Defendants. )
---------------------------------------------------------X

**SECOND AMENDED
COMPLAINT**

**JURY TRIAL DEMANDED**

**17 Civ. 789 (PGG) (BCM)**

## PRELIMINARY STATEMENT

1.      This is a civil action in which the plaintiffs seek relief for the defendants' violation

of their rights secured by the Civil Rights Act of 1871, 42 U.S.C. Section 1983; by the United

States Constitution, including its First, Fourth and Fourteenth Amendments and by the laws and

Constitution of the State of New York.  The plaintiffs seek damages, both compensatory and

punitive, affirmative and equitable relief, an award of costs and attorneys' fees, and such other and

further relief as this court deems equitable and just.

## JURISDICTION

2.      This action is brought pursuant to the Constitution of the United States, including its Fourth and Fourteenth Amendments, and pursuant to 42 U.S.C. §1983.  Jurisdiction is conferred upon this court by 42 U.S.C. §1983 and 28 U.S.C. §§1331 and 1343(a)(3) and (4), this being an action seeking redress for the violation of the plaintiffs' constitutional and civil rights.

3.      The plaintiffs further invoke this court's supplemental jurisdiction, pursuant to 28 U.S.C. §1367, over any and all state law claims and as against all parties that are so related to claims in this action within the original jurisdiction of this court that they form part of the same case or controversy.

## JURY TRIAL DEMANDED

4.      Plaintiffs demand a trial by jury on each and every one of their claims as pleaded herein.

## VENUE

5.      Venue is proper for the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §1391 (a), (b) and (c).

## NOTICE OF CLAIM

6.      Plaintiffs filed a timely Notice of Claim with the Comptroller of the City of New York on November 16, 2015.  More than 30 days have elapsed since the filing of the Notice of Claim, and adjustment or payment thereof has been neglected or refused.

## PARTIES

7.      Plaintiffs at all times relevant herein were residents of the State of New York, County of New York.  Plaintiffs are Latino.

2

8.      Defendant THE CITY OF NEW YORK is and was at all times relevant herein a municipal entity created and authorized under the laws of the State of New York.  It is authorized by law to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible.  Defendant THE CITY OF NEW YORK assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risk attaches to the public consumers of the services provided by the New York City Police Department.

9.      Defendants POLICE OFFICER MARCO PADILLA, Shield No. 25056; POLICE SERGEANT DANNY AGUILAR, Shield No. 2496; POLICE OFFICER "FNU" [First Name Unknown] RODRIGUEZ; JOHN DOE # 1; JOHN DOE # 2; POLICE SERGEANT ELLIOTT ZINSTEIN; POLICE OFFICER "FNU" [FIRST NAME UNKNOWN] FREEMAN, Shield No. 19103; POLICE OFFICER RENE CALZADA, Shield No. 23232; POLICE OFFICER ELBERT TIM, Shield No. 15162; RETIRED DETECTIVE ANTHONY MOORE, Shield No. 838; and JOHN DOES are and were at all times relevant herein duly appointed and acting officers, servants, employees and agents of THE CITY OF NEW YORK and/or the New York City Police Department (NYPD), a municipal agency of defendant THE CITY OF NEW YORK.  Defendants POLICE OFFICER MARCO PADILLA, Shield No. 25056; POLICE SERGEANT DANNY AGUILAR, Shield No. 2496; POLICE OFFICER "FNU" [First Name Unknown] RODRIGUEZ; JOHN DOE # 1; JOHN DOE # 2; POLICE SERGEANT ELLIOTT ZINSTEIN; POLICE OFFICER "FNU" [FIRST NAME UNKNOWN] FREEMAN, Shield No. 19103; POLICE OFFICER RENE CALZADA, Shield No. 23232; POLICE OFFICER ELBERT TIM, Shield No. 15162; RETIRED DETECTIVE ANTHONY MOORE, Shield No. 838; and JOHN DOES are

and were at all times relevant herein acting under color of state law in the course and scope of their duties and functions as officers, agents, servants, and employees of defendant THE CITY OF NEW YORK, were acting for, and on behalf of, and with the power and authority vested in them by THE CITY OF NEW YORK and the New York City Police Department, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.  Defendants POLICE OFFICER MARCO PADILLA, Shield No. 25056; POLICE SERGEANT DANNY AGUILAR, Shield No. 2496; POLICE OFFICER "FNU" [First Name Unknown] RODRIGUEZ; JOHN DOE # 1; JOHN DOE # 2; POLICE SERGEANT ELLIOTT ZINSTEIN; POLICE OFFICER "FNU" [FIRST NAME UNKNOWN] FREEMAN, Shield No. 19103; POLICE OFFICER RENE CALZADA, Shield No. 23232; POLICE OFFICER ELBERT TIM, Shield No. 15162; RETIRED DETECTIVE ANTHONY MOORE, Shield No. 838; and JOHN DOES are sued individually and in their official capacity.

10.     Defendants POLICE SERGEANT DANNY AGUILAR, Shield No. 2496; JOHN DOE # 1; JOHN DOE # 2, POLICE SERGEANT ELLIOTT ZINSTEIN; RETIRED DETECTIVE ANTHONY MOORE, Shield No. 838; and RICHARD ROES are and were at all times relevant herein duly appointed and acting supervisory officers, servants, employees and agents of THE CITY OF NEW YORK and/or the New York City Police Department, responsible for the training, retention, supervision, discipline and control of subordinate members of the police department under their command.  Defendants POLICE SERGEANT DANNY AGUILAR, Shield No. 2496; JOHN DOE # 1; JOHN DOE # 2 and RICHARD ROES are and were at all times relevant herein acting under color of state law in the course and scope of their duties and

4

functions as supervisory officers, agents, servants, and employees of defendant THE CITY OF

NEW YORK, were acting for, and on behalf of, and with the power and authority vested in them

by THE CITY OF NEW YORK and the New York City Police Department, and were otherwise

performing and engaging in conduct incidental to the performance of their lawful functions in the

course of their duties.  Defendants POLICE SERGEANT DANNY AGUILAR, Shield No. 2496;

JOHN DOE # 1; JOHN DOE # 2, POLICE SERGEANT ELLIOTT ZINSTEIN, RETIRED

DETECTIVE ANTHONY MOORE, Shield No. 838; and RICHARD ROES are sued individually

and in their official capacity.

## STATEMENT OF FACTS

11.     On the morning of November 3, 2015, approximately 7:30 a.m. or so, Plaintiffs

DAVID FERNANDEZ and JOEY FERNANDEZ ("DAVID" and "JOEY"), who are brothers,

were at JOEY's home located at 1199 Boston Road, Bronx, New York.

12.     DAVID and JOEY had an argument with each other, that grew heated.

13.     During the course of the argument JOEY, in anger, kicked JOEY's bedroom door,

which fell off its hinges and into DAVID's nose, causing DAVID's nose to bleed.

14.     JOEY had not meant to hurt DAVID, and did not expect when he kicked the door

that it would come off its hinges and do anyone any physical harm.

15.     DAVID knew that his injury was unintentional and accidental.

16.     Neither JOEY nor DAVID struck or otherwise assaulted each other that morning.

17.     DAVID made a telephone call to request an ambulance, both for his nose and

because he was having issues related to his asthma.

18.     After a period of time, an ambulance arrived.

19.     When the ambulance arrived, DAVID was waiting outside.

20.     The emergency medical technicians ("EMTs") gave DAVID an ice pack for his nose.

21.     Shortly thereafter, approximately three NYPD cars and approximately six JOHN DOES members of the NYPD - on information and belief including Defendants PADILLA, AGUILAR, RODRIGUEZ, ZINSTEIN, FREEMAN, CALZADA, TIM, and MOORE  - arrived.

22.     When these JOHN DOES members of the NYPD arrived, they spoke with DAVID, who was calm and not agitated.

23.     DAVID explained that he had been arguing with his brother JOEY, and that the door had accidentally come off its hinges and hit him in the nose after JOEY kicked it.

24.     DAVID explained that it was an accident, and that JOEY had not attacked him and that DAVID did not wish to press any charges against JOEY.

25.     The JOHN DOES then had the building's superintendent let them into JOEY's home, without a warrant, and without JOEY's permission.

26.     When the JOHN DOES were in JOEY's home, he instructed them not to go into his bedroom, as his girlfriend was in there in her panties and bra.

27.     One of the JOHN DOES told JOEY, in sum and substance, that he did not care that his girlfriend was in her panties, and that he did not want to look at her, and the JOHN DOES entered JOEY's bedroom without his permission.

28.     JOEY also explained to the JOHN DOES what had transpired with his brother, and that there was no reason for them to be there, and that they should leave.

29.     JOEY also made it clear that he did not wish to press charges against DAVID.

6

30.     Neither JOEY nor DAVID punched each other on November 3, 2015, and neither of them ever told any member of the NYPD that the other had punched him.

31.     Without any lawful cause or justification, the JOHN DOES arrested both JOEY and DAVID.

32.     On information and belief, Defendant PADILLA handcuffed JOEY inside of his home, and took him outside where he saw that DAVID was in an ambulance.

33.     JOEY told Defendant PADILLA, more than once, that Defendant PADILLA was violating his rights.

34.     Once outside, JOEY asked a supervisor JOHN DOE – on information and belief Defendant AGUILAR - why he had been arrested.

35.     Defendant AGUILAR pushed JOEY and told him to go across the street.

36.     JOEY told AGUILAR, in sum and substance, that he was being cooperative and that AGUILAR should stop pushing him.

37.     Approximately 3-4 JOHN DOES - including, on information and belief, some or all of PADILLA, AGUILAR, RODRIGUEZ, ZINSTEIN, FREEMAN, CALZADA, TIM, and MOORE  - then pushed JOEY to the ground, and brutally beat and manhandled him, and put him into a police car.

38.     DAVID, having seen how the police had manhandled JOEY, then repeated to the JOHN DOES at the scene that he did not wish to press any charges against JOEY.

39.     An unmarked police car arrived at the scene, and plainclothes JOHN DOES emerged from it.

40.     JOHN DOE # 1, one of the plainclothes officers – who had a gold colored shield,

on information and belief a Detective or Sergeant or other supervisor (and who had a lighter colored skin tone), on information and belief one of Defendants AGUILAR, ZINSTEIN, or MOORE – put his arm around JOEY's neck and put JOEY in a chokehold inside of the police car.

41.     JOEY told JOHN DOE # 1 that he could not breathe from the chokehold, but the JOHN DOE # 1 continued to choke him.

42.     The plainclothes JOHN DOES then pulled JOEY from the police car by his leg, and hard onto the ground.

43.     The JOHN DOES at the scene then proceeded to brutally beat JOEY again, and then put JOEY into a second police car.

44.     DAVID was handcuffed after he told the JOHN DOES that he did not want to press charges against JOEY, and that the door fell into his nose by accident.

45.     DAVID complained that the handcuffs had been placed on him with a painful and unnecessary tightness, but the JOHN DOES did not loosen them.

46.     The JOHN DOES pushed DAVID into the side of a police car, such that his face hit the car, further injuring his nose.

47.     Both Plaintiffs were taken to a local police precinct, on information and belief the NYPD 42nd Precinct.

48.     JOEY was further brutalized on the way into the precinct, and carried in like an animal - with the JOHN DOES holding him up by the handcuffs and causing him great pain - and thrown head first into the desk and onto the floor of the precinct.

49.     DAVID was at this point shouting for the JOHN DOES to stop beating JOEY.

8

50.     JOHN DOE # 2 – one of the plainclothes officers (a black man) – kicked JOEY in the face and began hurling epithets at him (such as "faggot," "dickhead" and the like), and told JOEY, in sum and substance, that he knew that JOEY was gang-related (which is not true).

51.     Other JOHN DOES also joined in, and beat JOEY further in the precinct.

52.     JOEY and DAVID were put into separate cells, and each remained handcuffed in the cells with excessively tight handcuffs.

53.     Both JOEY and DAVID complained many times that they were in agony from the tight handcuffs, but the JOHN DOES responded with their middle fingers, and told them to be quiet ("shut the fuck up" was said by the JOHN DOES a number of times).

54.     DAVID asked repeatedly for medical care while at the precinct.

55.     At some point a specialized NYPD division, on information and belief the Emergency Services Unit ("ESU") arrived, and DAVID was taken to Bronx Lebanon Hospital at approximately Noon or 1:00 p.m. or so.

56.     DAVID's handcuffs were not loosened even when he was taken to the hospital, despite his continued complaints.

57.     When he was taken to the hospital, the JOHN DOES also put DAVID in leg shackles, without any possible justification.

58.     Neither JOEY nor DAVID at any point struck, or attempted to strike, any of the JOHN DOES members of the NYPD who had abused them so awfully.

59.     JOEY, who had also been asking for medical care, at about the same time was taken by other JOHN DOES to Lincoln Hospital.

60.     Both JOEY and DAVID, at their respective hospitals, continued to be held in

excessively tight handcuffs all that time, despite their numerous complaints, and then were both brought back to the precinct.

61.     Only once back at the precinct – by this time it was the early / mid-afternoon – were JOEY and DAVID's handcuffs removed.

62.     Plaintiffs were kept in excessively tight handcuffs for approximately six hours.

63.     At approximately 4 or 5 p.m. Plaintiffs were taken to Bronx Central Booking.

64.     DAVID was released without charges in the late afternoon or evening of November 3, 2015.

65.     JOEY was transferred to Brooklyn related to, on information and belief, an NYPD "i-card" (an internal NYPD request to either interview or arrest an individual), and then held at Rikers Island until he was released on bail concerning another incident on November 7, 2015 at approximately 8 p.m.  The charges that were lodged against JOEY stemming from the "i-card" have been dismissed in their entirety.

66.     The District Attorney's Affidavits (both JOEY and DAVID received one) in Support of Declining / Deferring Prosecution list Defendant PADILLA as Plaintiffs' arresting officer, and indicate that PADILLA  lied to the DA's office to attempt to justify his false arrest of Plaintiffs, and to attempt to have Plaintiffs be prosecuted.

67.     PADILLA lied to the DA's office, *inter alia*, that it was DAVID who kicked the door (it was JOEY, not DAVID), that JOEY had punched DAVID in the face (JOEY never punched DAVID on November 3, 2015).

68.     Defendant ZINSTEIN is listed as the "Supervisor Approving" on the NYPD Complaint and Arrest reports concerning Plaintiffs' arrests.

## FIRST CLAIM

## DEPRIVATION OF RIGHTS UNDER THE
## UNITED STATES CONSTITUTION AND 42 U.S.C. §1983

69.     The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

70.     By their conduct and actions in invading Plaintiff JOEY FERNANDEZ's home, and in falsely arresting and imprisoning, abusing process against, assaulting and battering, violating the rights to due process of, neglecting the medical needs of, violating and retaliating for the exercise of free speech and association of, unlawfully searching and seizing, failing to intercede on behalf of, and fabricating an account and /or evidence with regard to, Plaintiffs, Defendants POLICE OFFICER MARCO PADILLA, Shield No. 25056; POLICE SERGEANT DANNY AGUILAR, Shield No. 2496; POLICE OFFICER "FNU" [First Name Unknown] RODRIGUEZ; JOHN DOE # 1; JOHN DOE # 2; ZINSTEIN; FREEMAN; CALZADA; TIM; MOORE; and JOHN DOES, acting under color of law and without lawful justification, intentionally, maliciously, and with a deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, caused injury and damage in violation of Plaintiffs' constitutional rights as guaranteed under 42 U.S.C. §1983 and the United States Constitution, including its First, Fourth and Fourteenth amendments.

71.     As a result of the foregoing, plaintiffs were deprived of their liberty, suffered bodily injury, pain and suffering, psychological and emotional injury (JOEY seeks only garden-variety emotional distress), humiliation, costs and expenses, and were otherwise damaged and injured.

## SECOND CLAIM

## SUPERVISORY LIABILITY FOR DEPRIVATION OF RIGHTS UNDER THE UNITED STATES CONSTITUTION AND 42 U.S.C. §1983

72.     The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

73.     By failing to remedy the wrongs committed by their subordinates, and in failing to properly train, screen, supervise, or discipline their subordinates, supervisory officers POLICE SERGEANT DANNY AGUILAR, Shield No. 2496; JOHN DOE # 1; JOHN DOE # 2; POLICE SERGEANT ELLIOTT ZINSTEIN; RETIRED DETECTIVE ANTHONY MOORE, Shield No. 838; and RICHARD ROES caused damage and injury in violation of plaintiff's rights guaranteed under 42 U.S.C. §1983, and the United States Constitution, including its First, Fourth and Fourteenth amendments.

74.     As a result of the foregoing, plaintiffs were deprived of their liberty, suffered bodily injury, pain and suffering, psychological and emotional injury (JOEY seeks only garden-variety emotional distress), humiliation, costs and expenses, and were otherwise damaged and injured.

## THIRD CLAIM

## LIABILITY OF THE CITY OF NEW YORK
## FOR CONSTITUTIONAL VIOLATIONS

75.     The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

76.     At all times material to this complaint, defendant THE CITY OF NEW YORK,

12

acting through its police department, and through the individual defendants had <u>de</u> <u>facto</u> policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein.

77.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had <u>de</u> <u>facto</u> policies, practices, customs, and usages of failing to properly train, screen, supervise, or discipline employee police officers, and of failing to inform the individual defendants' supervisors of their need to train, screen, supervise or discipline said defendants.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

78.    At all times material to this complaint, the defendant THE CITY OF NEW YORK, acting through its police department and through the individual defendants, had <u>de</u> <u>facto</u> policies, practices, customs and/or usages of encouraging and/or tacitly sanctioning the cover-up of other law enforcement officers' misconduct, through the fabrication of false accounts and evidence and/or through "the blue wall of silence."  Such policies, practices, customs and/or usages are a direct and proximate cause of the unconstitutional conduct alleged herein.

79.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had <u>de</u> <u>facto</u> policies, practices, customs, and usages of encouraging and/or tacitly sanctioning the violation of and/or retaliation for individuals' exercise of free speech and association when police officers take affront to such lawful protected activity including where individuals express verbal criticism of police conduct or question the propriety of police conduct.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

80.     At all times material to this complaint, the defendant THE CITY OF NEW YORK, acting through its police department and through the individual defendants, had de facto policies, practices, customs and/or usages of engaging in unconstitutional and overly aggressive stops and frisks, and arrests, which are implemented disproportionately upon people of color.  Such policies, practices, customs and/or usages are a direct and proximate cause of the unconstitutional conduct alleged herein.

81.     As a result of the foregoing, plaintiffs were deprived of their liberty, suffered bodily injury, pain and suffering, psychological and emotional injury (JOEY seeks only garden-variety emotional distress), humiliation, costs and expenses, and were otherwise damaged and injured.

## FOURTH CLAIM

### RESPONDEAT SUPERIOR LIABILITY OF THE CITY OF NEW YORK FOR STATE LAW VIOLATIONS

82.     The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

83.     The conduct of the individual defendants alleged herein, occurred while they were on duty and in uniform, and/or in and during the course and scope of their duties and functions as New York City police officers / supervisors, and/or while they were acting as agents and employees of defendant THE CITY OF NEW YORK, and, as a result, defendant THE CITY OF NEW YORK is liable to plaintiffs pursuant to the state common law doctrine of respondeat superior.

84.     As a result of the foregoing, plaintiffs were deprived of their liberty, suffered

bodily injury, pain and suffering, psychological and emotional injury (JOEY seeks only garden-variety emotional distress), humiliation, costs and expenses, and were otherwise damaged and injured.

## FIFTH CLAIM

## ASSAULT AND BATTERY

85.     The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

86.     By the actions described above, defendants did inflict assault and battery upon the plaintiffs.  The acts and conduct of defendants were the direct and proximate cause of injury and damage to the plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

87.     As a result of the foregoing, plaintiffs were deprived of their liberty, suffered bodily injury, pain and suffering, psychological and emotional injury (JOEY seeks only garden-variety emotional distress), humiliation, costs and expenses, and were otherwise damaged and injured.

## SIXTH CLAIM

## FALSE ARREST AND FALSE IMPRISONMENT

88.     The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

89.     By the actions described above, defendants caused plaintiffs to be falsely arrested and imprisoned, without reasonable or probable cause, illegally and without a warrant, and without any right or authority to do so.  The acts and conduct of the defendants were the direct

15

and proximate cause of injury and damage to the plaintiffs and violated their statutory and

common law rights as guaranteed by the laws and Constitution of the State of New York.

90.     As a result of the foregoing, plaintiffs were deprived of their liberty, suffered

bodily injury, pain and suffering, psychological and emotional injury (JOEY seeks only garden-

variety emotional distress), humiliation, costs and expenses, and were otherwise damaged and

injured.

## SEVENTH CLAIM

### VIOLATION OF RIGHT TO EQUAL PROTECTION OF LAW

91.     The plaintiffs incorporate by reference the allegations set forth in all preceding

paragraphs as if fully set forth herein.

92.     By the actions described above, defendants violated plaintiffs' rights to equal

protection of law.  The acts and conduct of the defendants were the direct and proximate cause of

injury and damage to the plaintiffs and violated their statutory and common law rights as

guaranteed by the laws and Constitution of the State of New York.

93.     As a result of the foregoing, plaintiffs were deprived of their liberty, suffered

bodily injury, pain and suffering, psychological and emotional injury (JOEY seeks only garden-

variety emotional distress), humiliation, costs and expenses, and were otherwise damaged and

injured.

## EIGHTH CLAIM

### VIOLATION OF AND RETALIATION FOR THE EXERCISE
### OF RIGHTS TO FREE SPEECH AND ASSEMBLY

94.     The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

95.     By the actions described above, defendants violated, and retaliated for the exercise of, the free speech and assembly rights of plaintiffs.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

96.     As a result of the foregoing, plaintiffs were deprived of their liberty, suffered bodily injury, pain and suffering, psychological and emotional injury (JOEY seeks only garden-variety emotional distress), humiliation, costs and expenses, and were otherwise damaged and injured.

## NINTH CLAIM

### ABUSE OF PROCESS

97.     The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

98.     By the conduct and actions described above, defendants employed regularly issued process against plaintiffs compelling the performance or forbearance of prescribed acts.  The purpose of activating the process was intent to harm plaintiffs without economic or social excuse or justification, and the defendants were seeking a collateral advantage or corresponding detriment to plaintiffs which was outside the legitimate ends of the process.  The acts and conduct

17

of the defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

99.     As a result of the foregoing, plaintiffs were deprived of their liberty, suffered bodily injury, pain and suffering, psychological and emotional injury (JOEY seeks only garden-variety emotional distress), humiliation, costs and expenses, and were otherwise damaged and injured.

## TENTH CLAIM

## TRESPASS

100.     The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

101.     The defendants willfully, wrongfully and unlawfully trespassed upon the person of plaintiffs.

102.     As a result of the foregoing, plaintiffs were deprived of their liberty, suffered bodily injury, pain and suffering, psychological and emotional injury (JOEY seeks only garden-variety emotional distress), humiliation, costs and expenses, and were otherwise damaged and injured.

## ELEVENTH CLAIM

## INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

103.     The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

104.     By the actions described above, defendants engaged in extreme and outrageous

18

conduct, conduct utterly intolerable in a civilized community, which intentionally and/or negligently caused emotional distress to plaintiffs.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the DAVID and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

105.    As a result of the foregoing, DAVID was deprived of his liberty, suffered bodily injury, pain and suffering, psychological and emotional injury, humiliation, costs and expenses, and were otherwise damaged and injured.

## TWELFTH CLAIM

### NEGLIGENCE

106.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

107.    The defendants, jointly and severally, negligently caused injuries, emotional distress and damage to the plaintiffs.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

108.    As a result of the foregoing, plaintiffs were deprived of their liberty, suffered bodily injury, pain and suffering, psychological and emotional injury (JOEY seeks only garden-variety emotional distress), humiliation, costs and expenses, and were otherwise damaged and injured.

**THIRTEENTH CLAIM**

**NEGLIGENT HIRING, SCREENING, RETENTION, SUPERVISION AND TRAINING**

109.     The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

110.     Defendants THE CITY OF NEW YORK negligently hired, screened, retained, supervised and trained defendants.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

111.     As a result of the foregoing, plaintiffs were deprived of their liberty, suffered bodily injury, pain and suffering, psychological and emotional injury (JOEY seeks only garden-variety emotional distress), humiliation, costs and expenses, and were otherwise damaged and injured.

**FOURTEENTH CLAIM**

**CONSTITUTIONAL TORT**

112.     The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

113.     Defendants, acting under color of law, violated plaintiffs' rights pursuant to Article I, §§ 6, 8, 11 and 12 of the New York State Constitution.

114.     A damages remedy here is necessary to effectuate the purposes of §§ 6, 8, 11 and 12 of the New York State Constitution, and appropriate to ensure full realization of plaintiffs' rights under those sections.

115.     As a result of the foregoing, plaintiffs were deprived of their liberty, suffered

bodily injury, pain and suffering, psychological and emotional injury (JOEY seeks only garden-variety emotional distress), humiliation, costs and expenses, and were otherwise damaged and injured.

WHEREFORE, the Plaintiffs demand the following relief jointly and severally against all of the defendants:

    a.  Compensatory damages;

    b.  Punitive damages;

    c.  The convening and empaneling of a jury to consider the merits of the claims herein;

    d.  Costs and interest and attorney's fees;

    e.  Such other and further relief as this court may deem appropriate and equitable.

Dated:      New York, New York
           September 6, 2017

                           _/S/   Jeffrey A. Rothman_____
                          JEFFREY A. ROTHMAN, Esq.
                          Law Office of Jeffrey A. Rothman
                          315 Broadway, Suite 200
                          New York, New York 10007
                          (212) 227-2980

                          Attorney for Plaintiffs