UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DAVID FERNANDEZ and JOEY
FERNANDEZ,

               Plaintiffs,

     - against -

THE CITY OF NEW YORK, POLICE
OFFICER MARCO PADILLA, Shield No.
25056, POLICE SERGEANT ELLIOTT
ZINSTEIN, POLICE OFFICER "FNU"
FREEMAN, Shield No. 19103, POLICE
OFFICER ELBERT TIM, Shield No. 15162,

            Defendants.

**ORDER**

17 Civ. 789 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

       Plaintiffs Joey and David Fernandez have brought Section 1983 and state law

claims against several New York City Police Department ("NYPD") officers and the City of

New York (the "City").  (Second Am. Cmplt. ("SAC") (Dkt. No. 29)) The claims arise from a

November 3, 2015 incident in which Plaintiffs – who are brothers – had an argument at Joey

Fernandez's home, during which Joey injured David.  David called 911, an ambulance arrived,

and David was treated for his injuries.  NYPD officers also arrived at the scene, and arrested

both brothers.

       Defendants have moved for reconsideration of this Court's April 30, 2020 Order,

which granted in part and denied in part Plaintiff's motion for summary judgment and

Defendants' motion for summary judgment.  (Apr. 30, 2020 Order (Dkt. No. 109))[1]  For the

reasons stated below, Defendants' motion for reconsideration will be denied.

---

[1] Familiarity with the Court's April 30, 2020 Order (Dkt. No. 109) is assumed.

## BACKGROUND

In the fifty-four page April 30, 2020 Order, this Court granted Plaintiffs summary judgment on Joey's warrantless entry and trespass claims under Section 1983 and state law as to Officer Tim, Sergeant Zinstein, and the City, but otherwise denied Plaintiffs' summary judgment motion.  (Id. at 53)[2]

This Court granted Defendants summary judgment on (1) Joey's Section 1983 and state law false arrest claims; (2) David's Section 1983 and state law false arrest claims as to Officers Tim, Rodriguez, Freeman, and Calzada, and Sergeant Aguilar; (3) Plaintiffs' First Amendment claims; (4) Plaintiffs' Section 1983 and state law malicious abuse of process claims; (5) Plaintiffs' Section 1983 and state law denial of fair trial and fabrication of evidence claims; (6) Plaintiffs' Section 1983 excessive force claims, except as to David's claim against Officer Padilla for tight handcuffing and a nose injury, Joey's claim against Officers Tim and Padilla for tight handcuffing, and Joey's claim against Officers Tim and Freeman, and Sergeant Zinstein, for injuries suffered inside the first police car; (7) Plaintiffs' supervisory liability claim, except as to Sergeant Zinstein; (8) Plaintiffs' Monell claim; (9) David's state law claims; and (10) Joey's state law claims for negligence, negligent and intentional infliction of emotional distress, and under Article I, §§ 8 and 12 of the New York State Constitution.  Defendants' motion for summary judgment was otherwise denied.  (Id. at 53-54)

Defendants now seek reconsideration concerning this Court's denial of their summary judgment motion as it pertains to David's excessive force claim against Officer Padilla for injuries to his nose and injuries sustained as a result of tight handcuffs.  (Def. Br. (Dkt. No. 110))

---

[2]  All references to page numbers in this Order are as reflected in this District's Electronic Case Files ("ECF") system.

**DISCUSSION**

## I.    LEGAL STANDARD

"Motions for reconsideration are governed by Local Rule 6.3 and are committed to the sound discretion of the district court." Liberty Media Corp. v. Vivendi Universal, S.A., 861 F. Supp. 2d 262, 265 (S.D.N.Y. 2012). "Reconsideration of a previous order by the court is an 'extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'" RST (2005) Inc. v. Research in Motion Ltd., 597 F. Supp. 2d 362, 365 (S.D.N.Y. 2009) (quoting In re Health Mgmt. Sys., Inc. Sec. Litig., 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) (citations and quotation marks omitted)). "A motion for reconsideration may not be used to advance new facts, issues or arguments not previously presented to the Court, nor may it be used as a vehicle for relitigating issues already decided by the Court." Davidson v. Scully, 172 F. Supp. 2d 458, 461 (S.D.N.Y. 2001).

"The major grounds justifying reconsideration are 'an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 4478). "To these ends, a request for reconsideration under Rule 6.3 must demonstrate controlling law or factual matters put before the court in its decision on the underlying matter that the movant believes the court overlooked and that might reasonably be expected to alter the conclusion reached by the court." RST (2005) Inc., 597 F. Supp. 2d at 365 (citing Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995)).

"[Local] Rule 6.3 is intended to '"ensure the finality of decisions and to prevent the practice of a losing party . . . plugging the gaps of a lost motion with additional matters."'" Id. (second alteration in original) (quoting S.E.C. v. Ashbury Capital Partners, L.P., No. 00 Civ.

7898, 2001 WL 604044, at *1 (S.D.N.Y. May 31, 2001) (quoting Carolco Pictures, Inc. v. Sirota, 700 F. Supp. 169, 170 (S.D.N.Y. 1988))).  "A court must narrowly construe and strictly apply Rule 6.3 so as to avoid duplicative rulings on previously considered issues and to prevent Rule 6.3 from being used to advance different theories not previously argued, or as a substitute for appealing a final judgment."  Id.

## II.  ANALYSIS

### A.  David's Nose Injury

In its April 30, 2020 Order, this Court found that "medical records support David's claim that his nose injury was not incidental, but was instead traumatic and the product of considerable force.  Moreover, David's deposition testimony is not inconsistent with the notion that his nose injury was caused by the officers' use of force.  The Court concludes that there are material issues of fact as to how David sustained his nose injury and the severity of the nose injury."  (Apr. 30, 2020 Order (Dkt. No. 109) at 35)

Defendants argue that "th[is] Court overlooked the fact that a few minutes earlier David[] had already suffered an injury to his nose that similarly caused bleeding before he was placed in the police car.  Joey had kicked a door off its hinges or punched David, injuring David's nose causing bleeding that was treated by an ambulance attendant before his arrest."  (Def. Br. (Dkt. No. 110) at 3)  Defendants also argue that "absent expert testimony, [David] failed to meet his burden of demonstrating that the nose injury was caused or exacerbated by Officer Padilla's actions, and not by his brother . . . ."  (Id.)

It is patently obvious that the Court did not overlook the fact that David had suffered an injury to his nose before the police arrived.  The Court's April 30, 2020 Order explicitly notes that the evidence shows that "Joey kick[ed] his bedroom door[,] . . . [which] fell

off its hinges and struck David in the face, causing his nose to bleed." (Apr. 30, 2020 Order
(Dkt. No. 109) at 2) This Court's ruling that "there are material issues of fact as to how David
sustained his nose injury" (id. at 35) addresses a conflict in the evidence that Defendants would
prefer to ignore. Contrary to Defendants' wishes, the law does not permit this Court to resolve
the factual issue of whether David's fractured nose was caused by his brother's kick to his
bedroom door or by Officer Padilla, who allegedly slammed his face into a police vehicle. (Id. at
6, 8-9)

   In seeking reconsideration, Defendants also argue that the law requires Plaintiffs
to offer expert testimony as to causation, and that they have not proffered any such evidence.
(Def. Br. (Dkt. No. 110) at 3) A reasonable jury could conclude based on David's account,
however, that his fractured nose was caused by Officer Padilla and not by his brother's kick to
the bedroom door. See Hicks v. Vill. of Ossining, No. 12 CV 6874 (VB), 2016 WL 345582, at
*5 (S.D.N.Y. Jan. 27, 2016) (holding that despite defendants' claims of prior injuries to
plaintiff's wrist, ankle, and back, "[a] reasonable juror could credit plaintiff's account that his
[wrist and back] injuries were caused by defendants, or that the force applied by the officers'
knees [to plaintiff's back] or the handcuffs [to plaintiff's wrists] exacerbated preexisting
injuries"); Pelayo v. Port Auth., 893 F. Supp. 2d 632, 642 (S.D.N.Y. 2012) ("plaintiff's sworn
assertions of excessive force causing injury and requiring medical attention raise sufficient
questions of material fact and preclude their resolution as a matter of law on a motion for
summary judgment"). The cases cited by Defendants (Def. Br. (Dkt. No. 110) at 3) are not to the
contrary.

   In Prescott v. Riker Island Med. Staf., No. 09 CIV. 255 SAS, 2011 WL 1435218
(S.D.N.Y. Apr. 12, 2011), the court states that "'[w]hile recovery for aggravation of a pre-

existing condition is not precluded . . . , recovery remains available only for injuries caused by the use of excessive force.'" <u>Prescott</u>, 2011 WL 1435218, at *6 (quoting <u>Brown v. Busch</u>, 954 F. Supp. 588, 595 (W.D.N.Y. 1997)).  This case thus stands for the unremarkable proposition that where a plaintiff bringing an excessive force claim suffered a pre-existing injury, plaintiff can only recover for injuries sustained as a result of the alleged excessive force.  <u>Prescott</u> tells us nothing about the nature of the proof plaintiff must offer to prove causation.[3]

Similarly, in <u>Kaplan v. City of New York</u>, No. 14 CIV. 4945 (RJS), 2018 WL 2084955 (S.D.N.Y. Mar. 22, 2018), the court noted that a doctor's "letter [did] not indicate that Plaintiff's injury was attributable to the handcuffing as opposed to the gradual worsening that Plaintiff had been experiencing over the past three years . . . ." <u>Id.</u> at *10 (internal quotation marks omitted).  <u>Kaplan</u> does not say that expert testimony is necessary to prove causation, and – as with <u>Prescott</u> – the facts are quite different, given that this case does not involve a pre-existing degenerative medical condition.

Defendants have not demonstrated that this Court overlooked "controlling law or factual matters . . . that might reasonably be expected to alter the conclusion reached by the court." <u>RST (2005) Inc.</u>, 597 F. Supp. 2d at 365.  Instead, Defendants ask this Court to resolve a factual dispute that must be presented to a jury.

Defendants' motion for reconsideration will – as to David's nose injury – be denied.

---

[3]  The facts of <u>Prescott</u> are also quite different.  In that case, plaintiff "did not mention [the defendant's] alleged excessive force when receiving medical attention. . . ." <u>Prescott</u>, 2011 WL 1435218, at *6.  Here, by contrast, David's St. Barnabas Hospital records for November 3, 2015 report that David said that he had "nose pain where he said a police officer slammed his face into the cop car." (Pltf. Add'l R. 56.1 Stmt. (Dkt. No. 96) ¶ 265 (citing Rothman Decl., Ex. 14 (Dkt. No. 97-6) at 1))

B.    **David's Handcuffing Injuries**

In the April 30, 2020 Order, this Court found that there was evidence that David's "[c]arpal tunnel syndrome condition persist[ed] more than a year after [his] arrest," and that accordingly there was evidence that David had suffered more than "'temporary discomfort.'" While acknowledging that "Defendants dispute causation []," the Court concluded that "whether David's injury was caused by the tight handcuffs presents an issue of fact for a jury."  (Apr. 30, 2020 Order (Dkt. No. 109) at 33)

Defendants contend that "the nexus between a complaint of bilateral wrist pain on one day and the diagnosis of carpal tunnel syndrome over a year later is not obvious at all, and without medical expert proof, the Court should have dismissed David's tight handcuffing claim." (Def. Br. (Dkt. No. 110) at 4)  In this regard, Defendants cite the following evidence:  "First, the note in the Henry Ford chart does not attribute the carpal tunnel syndrome to alleged tight handcuffing, but rather, only notes that the complaints of tingling started a month before – not a year before when he was allegedly tightly handcuffed."  (Id.)  "Second, the bilateral wrist pain had apparently resolved a week after the alleged tight handcuffing.  Plaintiff complained of bilateral wrist pain on his first visit after his release from custody . . . but there is no mention of wrist pain on the subsequent visit to St. Barnabas a week later."  (Id.)

Once again, the Court did not overlook the evidence Defendants cite.  To the contrary, the Court quoted Defendants' argument that David's medical records for treatment while in custody "'do not contain a single mention of . . . wrist or hand injuries, let alone a notation or other objective signs of wrist or hand injuries . . . .'"  (Apr. 30, 2020 Order (Dkt. No. 109) at 32 (quoting Def. S.J. Br. (Dkt. No. 85) at 24))  As the Court also pointed out, however, "Defendants do not dispute that David complained of 'bilateral wrist . . . pain' at St. Barnabas

Hospital on the day of his arrest." (Id. at 33) Nor did Defendants dispute that – a year after David's arrest – he was diagnosed with "'carpal tunnel syndrome, right.'" (Id.) As with David's nose injury, this Court cannot resolve the factual issue of whether tight handcuffing caused David's carpal tunnel syndrome condition.

Defendants again argue that expert testimony is necessary to demonstrate causation. According to Defendants, "[w]hether a plaintiff may meet the burden of proving causation without expert testimony depends on whether 'the nexus between the injury and the alleged cause' would be 'obvious to the lay juror.'" (Def. Br. (Dkt. No. 110) at 4 (quoting Wills v. Amerada Hess Corp., 379 F.3d 32, 46 (2d Cir. 2002))) Defendants further argue that the nexus between David's carpal tunnel syndrome and the alleged tight handcuffing would not be obvious to a lay juror. (Id.)

Defendants once again cite case law that is not on point. In Wills v. Amerada Hess Corp., the Second Circuit considered whether plaintiff had demonstrated that his exposure to certain toxins had caused his cancer. The court concluded that "the causal link between exposure to toxins and other behavior and squamous cell carcinoma is sufficiently beyond the knowledge of the lay juror that expert testimony is required to establish causation." Wills, 379 F.3d at 46. Here, however, a lay juror could readily comprehend that tight handcuffing might lead to short-term pain as well as a longer-term condition such as carpal tunnel syndrome. While Defendants are free to argue to a jury that the gap in time between the incident and the diagnosis undermines David's claim, this Court cannot resolve the factual issue as a matter of law.

Defendants cite Hailoo v. Disability RMS, No. 14-CV-1992(ADS)(ARL), 2015 WL 7575906 (E.D.N.Y. Nov. 25, 2015), for the proposition that "[c]arpal tunnel syndrome causation usually requires the testimony and analysis of multiple medical experts." (Def. Reply

Br. (Dkt. No. 113) at 3)  But <u>Hailoo</u> contains no such language.  While the Hailoo court considered expert opinions in denying defendants' motion for summary judgment, <u>see Hailoo</u>, 2015 WL 7575906, at *18, the court did not rule that an expert report was a prerequisite for bringing an excessive force claim premised on excessively tight handcuffs.

        Defendants have not demonstrated that this Court overlooked "controlling law or factual matters . . . that might reasonably be expected to alter the conclusion reached by the court." <u>RST (2005) Inc.</u>, 597 F. Supp. 2d at 365.  Defendants' motion for reconsideration as to David's tight handcuffs excessive force claim will be denied.

<u>**CONCLUSION**</u>

        Defendants' motion for reconsideration is denied.  The Clerk of Court is directed to terminate the motion (Dkt. No. 110).

Dated: New York, New York
      June 24, 2020

                                                          SO ORDERED.

                                                                  _____
                                                                  Paul G. Gardephe
                                                                  United States District Judge